553 So.2d 1344 (1989)
David Frederick BULLEN a/K/a Owen Gibbs and Roy William Garner a/K/a Douglas Henry Stillwell, Appellants,
v.
HER MAJESTY'S GOVERNMENT OF THE UNITED KINGDOM, Appellee.
No. 88-1315.
District Court of Appeal of Florida, Fourth District.
December 20, 1989.
Rehearing Denied January 24, 1990.
Edward S. Schwartz, of Law Offices of Philip M. Gerson, P.A., Miami, for appellants.
Kenneth E. Brooten, Jr., of Law Offices of Kenneth E. Brooten, Jr., Chartered, Orlando and Washington, D.C., for appellee.
FRANK, RICHARD H., Associate Judge.
This appeal arises from the trial court's entry of a final summary judgment in favor of the United Kingdom. In doing so, the trial court domesticated and enforced judgments rendered by that sovereign and invested it with title to property, real and personal, located in Broward County. We affirm.
The appellants were convicted in the criminal court of the United Kingdom of conspiracy to contravene section 38(1) of *1345 the Finance Act 1972 by the fraudulent evasion of value added tax. Each was sentenced to a term of imprisonment and fined. The offenses had caused loss or damage to Her Majesty's Customs and Excise in amounts approximating that which was due for the value added tax  some 1.9 million pounds. The appellants were declared criminally bankrupt and the British officials filed creditor's petitions for receiving orders against the appellants in their real and fictitious names, indicating the amounts owed the Customs and Excise. The receiving orders were entered and an official receiver of the estates of the debtors was designated. It is those orders which are at the heart of the trial court's final summary judgment.
By way of background, it appears the appellants appealed their sentences on the ground that it was wrong to impose fines and orders for costs where receiving orders had been entered; that it was wrong to impose consecutive sentences in default of payment of the fines because the effect of the criminal bankruptcy orders was to ensure that appellants would be unable to pay the fines, which effectively resulted in sentences above the permitted maximum. The British Court of Appeal quashed the fines and reduced Garner's term of imprisonment for reasons not significant to this appeal. See Regina v. Garner, [1986] 1 W.L.R. 73. The appellate court noted that the receiving orders had the effect of vesting in the receiver all of the appellants' assets in England and abroad.
The United Kingdom thereafter filed a complaint in the Circuit Court of Broward County to recognize and enforce the foreign judgments and a notice of lis pendens affecting a condominium within Broward County. The property was titled in Bullen's fictitious name of Owen Gibbs. After the parties filed cross motions for summary judgment or judgment on the pleadings, and a hearing was held, the trial court entered an order finding that there was no dispute that Bullen a/k/a Gibbs was the record owner of the real property, the title to which was sought in the name of the British receiver by the domestication and enforcement of the British orders. The trial court further found that "[t]he enforcement of the Foreign Country Judgments in the case sub judice is consistent with the law and public policy of the state of Florida," citing sections 895.02, et seq., Florida Statutes, and Banderas v. Banco Central del Ecuador, 461 So.2d 265 (Fla. 3d DCA 1985). It declared that Gibbs had no interest in the condominium or its contents.
The appellants have attacked the entry of the final summary judgment on three grounds, none of which has merit. First, they argue, the orders entered incident to criminal convictions were penal and not enforceable by a foreign court. Secondly, they allege that the orders were entered by the United Kingdom because Bullen and Garner owed taxes to that country, and an American court cannot enforce a foreign country's judgment for taxes. Their final contention is that Florida's courts should not grant comity to British criminal bankruptcy or receiving orders because there was no evidence that a British court would enforce such orders of other nations.
The first contention is readily disposed of with reference to the fact that the fines imposed in the criminal proceeding were quashed by the British appellate court. Moreover, the receiving orders represent nothing other than judgments reflecting indebtedness to the United Kingdom arising from the fraudulent diversion of money collected as value added tax. The second ground, based upon the claim that the illegally gained funds are "taxes" owed by the appellants as an aspect of the United Kingdom's taxing laws, falls far short of the mark. That the funds came into the appellants' hands through a governmental taxing policy does not mean that such funds forever retained the mantle of "taxes." The source of the money became irrelevant upon defalcation and the United Kingdom simply became a judgment creditor of the funds illicitly held by the appellants. *1346 Illegal conversion of the funds to the appellants' personal use rendered them as susceptible of recapture through a judicial decree as would be the case with any asset within the appellants' possession. We also reject the appellants' third assertion that the British courts would not enforce a similar order issued by another country. Nothing has been presented to us indicating a public policy consideration foreclosing a Florida court from enforcing the receiving orders. See Warren v. Warren, 73 Fla. 764, 75 So. 35 (1917). The appellants have not impeached the validity of the British court's exercise of jurisdiction over the subject matter or the appellants and there has been no attack upon the jurisprudence underlying entry of the receiving orders. There is certainly no showing by the appellants of prejudice in the British tribunal or a fraud on its part in granting the receiving orders. Thus, the receiving orders are entitled to a conclusive effect as between the appellants and the United Kingdom. Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Within that context, the customary principle of comity controls. Cf., Ogden v. Ogden, 159 Fla. 604, 33 So.2d 870, 875 (1947) (we will not, on the ground of international comity, recognize the judgment of an English Court for that purpose when the essentials of due process, as our law requires, are not observed).
The appellants have attempted to mischaracterize the effect of domestication and enforcement of the British judgments. The opinion of the British appellate court explains the procedural effect of the criminal bankruptcy order:
The first thing to notice about a criminal bankruptcy order is that, of itself, it has no practical effect at all. All it does is provide conclusive proof of an act of bankruptcy upon which the official petitioner, who is the Director of Public Relations or one of the creditors named in the order, can petition for a receiving order... .
As we have said, the effect of the receiving order is to vest in the official receiver all of the assets of the offender.
1 W.L.R. at 77-78. From all indications, then, a receiving order entered in the United Kingdom is in no meaningful part different from a civil judgment rendered in the United States. The Florida court was asked to levy on the judgment and to declare that Bullen a/k/a Gibbs no longer maintained any judicially cognizable right in the subject condominium paramount to that invested in the British government by a decree originating in that country.
The trial court meticulously examined the documentation presented to it and received the testimony of the Assistant Chief Investigator of Her Majesty's Customs and Excise Investigation Division, who explained the legal procedures culminating in the receiving orders. The trial court properly concluded that:
the legal effect of the domestication and enforcement of the Foreign Country Judgments which are sought to be enforced is simply to vest title to the condominium and its contents in the Official Receiver [t]itle already having passed upon rendition of the Receiving Order to the Receiver.
We agree. Appellants have demonstrated no error.
Affirmed.
DOWNEY and DELL, JJ., concur.